UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2015 MSPB 58

Docket No. DA-0752-12-0396-I-3

**Sandra M. Ayers,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

November 2, 2015

Daniel J. Gamino, Esquire, Oklahoma City, Oklahoma, for the appellant.

Melissa Beeson Heindselman, Fort Sill, Oklahoma, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1       The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. We DENY the petition for review. Except as expressly MODIFIED by this Opinion and Order to find that the appellant's disclosure of an alleged inappropriate relationship was not protected, we AFFIRM the initial decision.

## BACKGROUND

¶2       The appellant was formerly employed as a Diagnostic Radiologic Technologist (Mammography), GS-0647-08, at the agency's Reynolds Army Community Hospital (RACH), Department of Radiology, Diagnostic Service, in

Fort Sill, Oklahoma. On February 21, 2012, the agency proposed to remove her based on 25 specifications of Conduct Unbecoming a Federal Civilian Employee. *Ayers v. Department of the Army*, MSPB Docket No. DA-0752-12-0396-I-1, Initial Appeal File (I-1 IAF), Tab 40, Subtab 4e. The appellant responded in writing, and on April 5, 2012, the agency issued a decision letter effecting her removal that same day. I-1 IAF, Tab 45, Subtab 4b.

¶3        The appellant filed a timely appeal, raising affirmative defenses of retaliation for whistleblowing, union activity, and equal employment opportunity (EEO) activity. I-1 IAF, Tabs 1, 111. A hearing was held over 7 days in August through October 2012. The appeal was dismissed without prejudice twice pending the Board's decision in *Day v. Department of Homeland Security*, 119 M.S.P.R. 589 (2013), concerning the retroactivity of certain portions of the Whistleblower Protection Enhancement Act of 2012 (WPEA). I-1 IAF, Tab 140, Initial Decision; *Ayers v. Department of the Army*, MSPB Docket No. DA-0752-12-0396-I-2, Initial Appeal File, Tab 2, Initial Decision. Following the issuance of *Day*, the appeal was again refiled on June 28, 2013. *Ayers v. Department of the Army*, MSPB Docket No. DA-0752-12-0396-I-3, Initial Appeal File (I-3 IAF), Tab 2.

¶4        The proceedings below culminated in a 253-page initial decision. I-3 IAF, Tab 12, Initial Decision (ID). Ultimately, the administrative judge sustained the charge, but only the following specifications: (a); (c) (in part); (d); (e); (j) (in part); (k) (in part); (*l*) (in part, merged with (j)); (r); and (s). *See* ID at 53-204. He further found that the appellant did not establish her claim of EEO retaliation, ID at 241-44, but did establish her claims of retaliation for whistleblowing, ID at 205-36, and union activity, ID at 236-41. Accordingly, the administrative judge reversed the action. ID at 244.

¶5        On petition for review, the agency challenges the administrative judge's findings on whistleblowing and union activity reprisal, and also contends that he should not have considered the whistleblowing retaliation claim in the first

instance. Petition for Review (PFR) File, Tab 3. The appellant has filed a response to the agency's petition. PFR File, Tab 6.

## ANALYSIS

Interim Relief

¶6      Where, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. 5 C.F.R. § 1201.116(a); *see* 5 U.S.C. § 7701(b)(2)(A)(ii), (B). In its certification, the agency stated that it had determined that it would be unduly disruptive to return the appellant to the mammography section at Fort Sill. PFR File, Tab 1 at 26. The agency explained that it therefore had placed the appellant on paid administrative leave beginning February 21, 2012, the date of the initial decision, and that she would remain in that status until April 14, 2012, at which time the agency would detail her to another department in RACH. *Id.*

¶7      Following her response to the agency's petition for review, the appellant filed an additional pleading, labeled as a "Petition for Enforcement," in which she alleged that the agency had failed to comply with the interim relief order. PFR File, Tab 10. She requested that the Board issue an order enforcing the interim relief previously ordered, and award attorney fees incurred in the preparation of her pleading. *Id.* The appellant's request is denied, because our regulations do not allow for a petition for enforcement of an interim relief order. *See* 5 C.F.R. § 1201.182(a)-(b). Her request for attorney fees is likewise premature, because our regulations do not allow for an award of attorney fees before the decision of the Board becomes final. *See* 5 C.F.R. § 1201.116(f).

¶8        We instead consider the appellant's pleading as a challenge to the agency's certification of compliance.  *See* 5 C.F.R. § 1201.116(b).  Ordinarily, where an appellant challenges the agency's certification of compliance with an interim relief order, the Board will issue an order affording the agency the opportunity to submit evidence of compliance.  *Id*.  If the agency fails to provide evidence of compliance in response to such an order, the Board may, at its discretion, dismiss the agency's petition for review.  5 C.F.R. § 1201.116(e).  In this case, however, we find that the agency's petition does not meet the criteria for review in any event, and the issuance of our final decision renders moot any dispute concerning the agency's compliance with the interim relief order.  Under these circumstances, it is unnecessary to issue an order under 5 C.F.R. § 1201.116(b).  If the appellant believes the agency is in noncompliance with the Board's final order, or if she seeks an award of attorney fees as the prevailing party in this appeal, she may file a petition for enforcement and/or a request for attorney fees in accordance with the instructions provided below.

The administrative judge did not abuse his discretion in permitting the appellant to raise her affirmative defense of whistleblowing reprisal.

¶9        On petition for review, the agency first argues that the administrative judge improperly considered the appellant's whistleblower reprisal claim.  PFR File, Tab 3 at 5-7.  The agency suggests that her claim was not raised in a timely fashion.  We disagree.

¶10        The Board's regulations provide that an appellant may raise a claim or defense not included in the appeal at any time before the end of the conference(s) held to define the issues in the case.  5 C.F.R. § 1201.24(b).  The regulation further provides that the appellant may not raise a new claim or defense after that time, except for good cause shown, and that a claim or defense not included in the appeal may be excluded if a party shows that including it would result in undue prejudice.  *Id*.  In this case, by the time of the July 13, 2012 prehearing conference that defined the issues in dispute, the appellant had timely raised a

claim that the agency removed her in retaliation for protected disclosures made in her April 2011 complaint to the agency's Inspector General (IG).  I-1 IAF, Tabs 62, 111.

¶11     Furthermore, the agency has not demonstrated that it was unduly prejudiced by the inclusion of the defense.  First, the record shows that agency counsel was already in possession of the complaint as well as the resulting IG report.  I-1 IAF, Tabs 107, 118.  The agency objects that the appellant did not identify which particular disclosures she believed to be protected until the close of the record.  PFR File, Tab 3 at 7.  However, the agency easily could have surmised that the disclosures in question were the two contained in her complaint, namely her allegations of workplace harassment and an inappropriate relationship between her first- and second-level supervisors.  I-1 IAF, Tab 107.  The agency was already well versed in these topics, as it had removed her in part for making the same allegations in the same April 8, 2011 written statement she provided to the IG.  I-1 IAF, Tab 30, Subtab 4e (specifications "b" and "n").  Nonetheless, the administrative judge granted the agency's request for a continuance, partly in order to provide it additional time to consider the affirmative defenses raised for the first time at the prehearing conference.  I-1 IAF, Tab 123.  Under these circumstances, we find the administrative judge did not err by including the appellant's whistleblowing reprisal claim.

The administrative judge correctly found that the appellant established her whistleblowing reprisal claim.

¶12     In a removal appeal, an appellant's claim of whistleblowing reprisal is treated as an affirmative defense.  *Simmons v. Department of the Air Force*, 99 M.S.P.R. 28, ¶ 22 (2005), *aff'd sub nom. Gebhardt v. Department of the Air Force*, 186 F. App'x 996 (2006).  In such an appeal, once the agency proves its initial case by a preponderance of the evidence, the appellant must show by a preponderance of the evidence that she made a protected disclosure

under 5 U.S.C. § 2302(b)(8)[1] and that the disclosure was a contributing factor in the agency's personnel action. *Simmons*, 99 M.S.P.R. 28, ¶ 22. If the appellant establishes a prima facie case of whistleblowing reprisal, then the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action absent any protected activity. *Id*., ¶ 23.

> *The appellant made a protected disclosure concerning alleged harassment by her first-level supervisor, but her disclosure of an alleged intimate relationship between her first- and second-level supervisors was not protected.*

¶13    A protected disclosure includes "any disclosure . . . to the Inspector General of an agency . . . of information which the employee [] reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(B) (2011). The test of a reasonable belief is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced one of the types of wrongdoing listed above. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Here, the administrative judge found that the appellant made protected disclosures in her April 2011 IG complaint concerning (1) alleged harassment by her first-level supervisor, J.P.; and (2) an alleged inappropriate relationship between J.P. and the appellant's second-level supervisor, W.G. ID at 209-11. The agency contends that the administrative judge erred on both counts. PFR File, Tab 3 at 11-17.

---

[1]    Insofar as the appellant may have engaged in activity under 5 U.S.C. § 2302(b)(9)(A)(i) and (C), which would now be protected under the WPEA, these provisions of the WPEA do not retroactively apply to this case. *See Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 7 (2014).

¶14    Regarding disclosure (1), the agency cites several nonprecedential decisions by the U.S. Court of Appeals for the Federal Circuit for the proposition that disclosure of personal workplace grievances is not protected by the Whistleblower Protection Act (WPA).   PFR File, Tab 3 at 8; *see Suggs v. Department of Veterans Affairs*, 415 F. App'x 240 (Fed. Cir. 2011); *Winfield v. Department of Veterans Affairs*, 348 F. App'x 577 (Fed. Cir. 2009); *Riley v. Department of Homeland Security*, 315 F. App'x 267 (Fed. Cir. 2009); *Doyle v. Department of Veterans Affairs*, 273 F. App'x 961 (Fed. Cir. 2008).   However, none of the cases cited by the agency involved allegations of harassment by a supervisor, which we have found may constitute an abuse of authority.  *See, e.g.*, *Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶¶ 11-12 (2011) (explaining that an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons); *Murphy v. Department of the Treasury*, 86 M.S.P.R. 131, ¶ 6 (2000).

¶15    Moreover, the administrative judge correctly found that the appellant had a reasonable belief in the truth of her allegation that J.P. was harassing her.  *See* ID at 83-112.  The appellant's belief that J.P. was harassing her was based in part—but not exclusively—on the decision by J.P. and Chief Radiologist P.D. to place her on a retraining program following her return from maternity leave in February 2011.  That decision was itself ostensibly based on two suboptimal mammograms conducted by the appellant in December 2010 that resulted in P.D. recalling the two affected patients.  However, the administrative judge agreed with the appellant that, assuming the callbacks did occur, the blame fell at least as much on the reviewing radiologist, who should not have released the patients when the initial images were taken.  The administrative judge further noted that these were the only two purported patient recalls among the "innumerable" screenings the appellant performed both before and after December 2010.  ID at 111-12.

¶16    On petition for review, the agency argues that the appellant was solely responsible for the patient recalls, because patients are released by the mammography technologist before the radiologist reviews the images. The agency also contends that, in comparing the number of exams performed by the appellant to those performed by J.P. and another technologist, G.A., the administrative judge failed to distinguish between different types of mammograms, some of which take longer than others. In addition, the agency contends that the appellant was responsible for a number of poor images (or "failures") in addition to the faulty mammograms that resulted in the two patient recalls. PFR File, Tab 1 at 12-13. However, assuming arguendo that the agency is correct on these points, the justification for the retraining program was nonetheless questionable. As the administrative judge noted, there was no contemporaneous documentation of the December 2010 recalls, which were first mentioned in memoranda for the record (MFR) by P.D. and J.P., dated April 11, and April 25, 2011, respectively. These MFRs were prepared after the appellant provided an April 8, 2011 statement to P.D. alleging harassment and an inappropriate relationship between J.P. and W.G., after the appellant informed P.D. and W.G. of her intent to file an IG complaint concerning these issues, and, in the case of J.P.'s MFR, after the appellant actually made the IG complaint. As the administrative judge observed, the timing of these events suggests that the MFRs were prepared after the fact as defensive measures, and not because the patient recalls were deemed to be serious when they purportedly took place. ID at 111.

¶17    Moreover, the agency overlooks other evidence that the retraining program was unjustified. Notably, RACH Chief of Staff E.G., who later proposed the appellant's removal, indicated in a May 26, 2011 email message that he was concerned there was an ulterior motive behind the retraining program. I-1 IAF, Tab 23 at 247-49. In addition, as the administrative judge noted, the appellant received a within-grade increase on January 2, 2011, which is at odds with the

decision to place her on a retraining program on February 23, 2011. *Id*. We therefore agree that the appellant reasonably believed that her placement on a retraining program was part of a pattern of harassment.

¶18    In any case, the decision to place the appellant on a retraining plan was not the only basis for her belief that J.P. was harassing her. I-1 IAF, Tab 107 at 2-3. Another factor was the appellant's negative performance evaluation issued by J.P. on March 25, 2011. *Id*. at 3. Significantly, the appellant successfully challenged that evaluation, and her grievances ultimately resulted in the elevation of her grades in two critical elements, the elevation of her overall rating to the second highest possible level, the removal of negative "bullets" and comments from the appraisal, and the removal of negative "key points made" from the cover sheet for her next performance year. I-1 IAF, Tab 12 at 406. The fact that the appellant succeeded in her challenge lends support to a finding that the negative performance evaluation was part of a pattern of harassment.

¶19    Moreover, as the administrative judge discussed at length, the appellant's perception that she was being harassed was shared by several other employees, not all of whom were her allies. *See Greenspan v. Department of Veterans Affairs*, 464 F.3d 1297, 1305 (Fed. Cir. 2006) (considering that others shared the appellant's beliefs as evidence those beliefs were reasonable). Most notably, E.G., who proposed the appellant's removal, also proposed to demote and suspend J.P. for 10 days on a charge of "Deficient Behavior as a Supervisor," one specification of which alleged that J.P. "[a]t times demonstrated poor communication, professional animosity, lack of collegiality and refusal to work with . . . [her] subordinates." I-1 IAF, Tab 112 at 22-23. In addition, RACH Chief of Nursing M.K., who conducted the agency's internal investigation that led to the appellant's removal, concluded that the disruptive workplace environment in the Mammography Section had been caused, at least in part, by "all parties," and faulted J.P.'s poorly planned and poorly documented retraining of the appellant. I-1 IAF, Tab 39.

¶20    The agency correctly observes that the fact that others may have shared the appellant's belief is not dispositive and that we should also consider the appellant's self-interest and potential bias in determining whether she had a reasonable belief in the truth of her disclosures.  *See Kinan v. Department of Defense*, 87 M.S.P.R. 561, ¶ 13 (2001).  Specifically, the agency contends that the appellant made her disclosures after she was informed of the performance appraisal and the planned retraining and that she "was angry" with these decisions.  PFR File, Tab 3 at 11.  However, it is obvious that the appellant could not have disclosed the alleged harassing actions until after they had taken place.  Further, while motive may be relevant to the determination of a reasonable belief, a disclosure is not excluded from protection based on an appellant's motive in making it.  *Carter v. Department of the Army*, 62 M.S.P.R. 393, 402 (1994), *aff'd*, 45 F.3d 444 (Fed. Cir. 1995) (Table); *see* WPEA, Pub. L. No. 112-199, § 101(b)(2)(C), 126 Stat. 1465, 1466 (codified at 5 U.S.C. § 2302(f)(1)) (codifying this rule in the WPEA).  In sum, under the circumstances of this case, we find that the appellant's self-interest and potential bias do not undermine the reasonableness of her belief that J.P. was harassing her.

¶21    The agency also contests the administrative judge's finding that the appellant made a protected disclosure concerning an alleged improper relationship between J.P. and W.G.  The agency first argues that her IG complaint was "not about the relationship" and that she only mentioned it to explain why she had not brought the alleged harassment to W.G.'s attention.  PFR File, Tab 3 at 10; *see* IAF, Tab 107.  However, even if the alleged relationship was not the primary focus of her IG complaint, the appellant nonetheless made the allegation on the front page of the complaint, and again in the first two paragraphs of the supporting list of "Grievances and Incidents."  I-1 IAF, Tab 107.  Moreover, as noted above, a disclosure is not excluded from protection because of the appellant's motive in making it.  *Carter*, 62 M.S.P.R. at 402.

¶22    We also discern no error in the administrative judge's finding that the disclosure was based on a reasonable belief. While it is undisputed that W.G. and J.P. were not in fact in an intimate relationship, the record reflects that the appellant was not alone in her impression. On April 18, 2011, P.D. counseled W.G. in writing about a "perceived improper relationship" with J.P. I-1 IAF, Tab 112 at 277-78. That same day, P.D. verbally counseled J.P. about the same issue. I-1 IAF, Tab 21 at 272. In his MFR recording the counseling, P.D. indicated that he told J.P. that, although he had not found sufficient evidence to confirm the appellant's allegations, he did find some Radiology Department employees who shared the appellant's perception of an improper relationship, and he counseled J.P. to "refrain from activities or actions that would contribute to this perception." *Id*. The shared perception of an improper relationship, even if inaccurate, weighs in favor of a finding that the appellant's belief was reasonable.[2] *See Greenspan*, 464 F.3d at 1305.

¶23    However, we disagree with the administrative judge that the appellant's allegation of an intimate relationship between J.P. and W.G. was a protected disclosure of an abuse of authority. We have held that it is an abuse of authority for a supervisor to give preferential treatment to a subordinate with whom he or she is having an intimate relationship. *Sirgo v. Department of*

---

[2] The agency cites *Special Counsel v. Spears*, [75 M.S.P.R. 639](#) (1997), in which the Board found that an allegation of preferential treatment between the respondent and a subordinate employee—who, according to office gossip, were having an affair—did not meet the reasonable belief standard. In reaching that finding, the Board noted that, while the agency's IG had found that there was a perception that the respondent was having an affair with the subordinate and giving her preferential treatment, that finding was unpersuasive, because there was no indication that the IG had considered the possibility that the rumors might have been malicious fabrications by a network of disgruntled employees. *Id*. at 655-56. In this case, however, we find nothing in the record to suggest such a conspiracy. Rather, it appears that the perception of an intimate relationship between J.P. and W.G. was based on the observation of innocent activities, e.g., shopping together, that were open to misinterpretation.

*Justice*, [66 M.S.P.R. 261](), 266-67 (1995). In this case, however, while the appellant stated in her IG complaint that she felt "uncomfortable" bringing her concerns about the hostile work environment to W.G.'s attention, she did not allege W.G. had in fact given J.P. preferential treatment or otherwise exercised his authority in an arbitrary or capricious manner. This case is thus distinguishable from *Sirgo*.

¶24    Nor did the appellant make a protected disclosure of a violation of law, rule, or regulation. Ordinarily, to make a protected disclosure of a law, rule, or regulation, an employee must identify the specific law, rule, or regulation that was violated. *Langer v. Department of the Treasury*, [265 F.3d 1259](), 1266 (Fed. Cir. 2001). Although an individual need not identify a statutory or regulatory provision by a particular title or number "when the statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation," *id*., the appellant's allegation of an improper relationship between J.P. and W.G. falls short of this standard. In finding the disclosure protected, the administrative judge cited Army Regulation R 600-20, chapter 4-16, which prohibits fraternization between officers of different ranks, but, as the agency correctly observes, J.P. and W.G. were not service members of different ranks. The administrative judge elsewhere cited the ethics regulations at [5 C.F.R. § 2635.101](b)(8) and (14), which prohibit employees from giving preferential treatment or creating the appearance thereof. *See* ID at 41 n.40; *see also* Department of Defense Directive 5500.07-R (Joint Ethics Regulation), § 1-300(b) (making 5 C.F.R. § 2635 applicable to enlisted military members). However, the appellant did not allege that W.G. gave or appeared to give J.P. preferential treatment. In sum, we find that the appellant's allegation of an improper relationship between J.P. and W.G., even though based on a reasonable belief, was not a protected disclosure.

*The appellant's protected disclosure was a contributing factor in her removal.*

¶25    To prevail on a claim under the WPA, an appellant must prove by preponderant evidence that her protected disclosures were a contributing factor in a personnel action.  The most common way of proving the contributing factor element is the "knowledge/timing" test.  *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 434 (Fed. Cir. 2009).  Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*  To satisfy the test, the appellant need demonstrate only that the fact of, not necessarily the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way.  *Armstrong v. Department of Justice*, 107 M.S.P.R. 375, ¶ 19 (2007).

¶26    The timing component of the test is satisfied where, as here, the contested personnel action took place slightly more than 1 year after the protected disclosure.  *See Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 20 (2008).  Furthermore, the agency's report of its internal investigation, which was a focus of both the notice of proposed removal and the deciding official's deliberations, included a reference to the appellant's IG complaint.  I-1 IAF, Tab 37 at 15; *see* I-1 IAF, Tab 40, Subtab 4e (proposal notice).  Hence, the proposing and deciding officials were aware of at least the fact of the appellant's disclosure, which is sufficient to satisfy the knowledge component.  Accordingly, we proceed to the question of whether the agency proved by clear and convincing evidence that it would have removed her in the absence of her protected whistleblowing activity.

<u>The administrative judge properly found that the agency failed to prove by clear and convincing evidence that it would have removed the appellant in the absence of her IG complaint.</u>

¶27    Because the appellant proved her prima facie case of whistleblower reprisal, the burden shifted to the agency. *See Simmons*, [99 M.S.P.R. 28](#), ¶ 23. In determining whether an agency met its burden to show by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors:  the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, [185 F.3d 1318](#), 1323 (Fed. Cir. 1999). Our reviewing court has further clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion."  *Whitmore v. Department of Labor*, [680 F.3d 1353](#), 1368 (Fed. Cir. 2012).

¶28    In considering the strength of the agency's evidence in support of its action, the administrative judge incorporated by reference his thorough analysis of all 25 specifications under the agency's charge.  ID at 53-204, 216-27.  We find that the administrative judge gave due consideration to the evidence for and against each specification, and we agree that the agency's failure to prove a majority of the specifications is a sign of overreach.  Moreover, contrary to the agency's suggestion in its petition for review, the administrative judge did acknowledge the extent to which the sustained conduct was disruptive to the work environment.  The question, however, is not whether the appellant's conduct *could* have warranted discipline, but whether the agency would have removed her in the absence of her whistleblowing.  *See, e.g.*, *Savage v. Department of the*

*Army*, 122 M.S.P.R. 612, ¶ 52 (2015) (remanding for further adjudication on the "clear and convincing" test even though at least one specification was sustained). As the administrative judge correctly noted, the strength of the agency's case is diminished to the extent the stress caused by its wrongful actions, such as the negative performance evaluation and placement of the appellant on a retraining program, led the appellant to act out against her better judgment. *See Whitmore*, 680 F.3d at 1375. The administrative judge also properly considered the extent to which the dysfunctional work environment was the result of the agency's hostile reaction to her whistleblowing. *See id.* at 1376; *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 31 (2013). Here, the agency continued to defend against the appellant's challenges to the appraisal and continued to implement the flawed retraining plan after her IG complaint was filed, and much of the sustained misconduct also occurred during this time frame. *See* ID at 220.

¶29  Concerning the second *Carr* factor, while we have found that the appellant's allegation of an improper relationship between J.P. and W.G. is not a protected disclosure, we nonetheless find that agency officials involved in the appellant's removal had a strong motive to retaliate against her based solely on her disclosure that J.P. was harassing her. Most obviously, J.P. herself had a clear and strong retaliatory motive. *See Whitmore*, 680 F.3d at 1371 (determining that reprisal motive of employees other than just the proposing and deciding officials may be relevant). Moreover, while neither the proposing nor deciding official was directly implicated by the appellant's protected disclosure, J.P was in their chain of command; therefore, the appellant's criticisms reflected on both in their capacity as managers and employees, which is sufficient to establish a substantial retaliatory motive. *See Chavez*, 120 M.S.P.R. 285, ¶ 33.

¶30  Finally, as the administrative judge explained, there is no evidence that the agency took similar actions against employees who were not whistleblowers but who were similarly situated. *See* ID at 235-36. In sum, notwithstanding our finding that one of the appellant's disclosures was not protected, we agree with

the administrative judge that the agency failed to prove by clear and convincing evidence that it would have removed her in the absence of her whistleblowing. Because we find that the removal action must be reversed based on the agency's violation of 5 U.S.C. § 2302(b)(8), we do not reach the question of whether the administrative judge was correct in finding that the appellant's removal was also the result of reprisal for her union activity.

## ORDER

¶31     We ORDER the agency to cancel the removal and to retroactively restore the appellant effective April 5, 2012.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶32     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶33     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶34     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶35　　　For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶36　　　This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT
## REGARDING YOUR RIGHT TO REQUEST
## CONSEQUENTIAL DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for consequential damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will then be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8). 5 U.S.C. § 1221(f)(3).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5

of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal

Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
| --- | --- |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.