**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GEORGE DUGGAN,
              *Petitioner*,

v.

DEPARTMENT OF DEFENSE,
              *Respondent.*

No. 16-73640

MSPB No.
SF-1221-14-0544-W-2

OPINION

On Petition for Review of an Order of the
Merits Systems Protection Board

Argued and Submitted December 8, 2017
San Francisco, California

Filed February 26, 2018

Before: Susan P. Graber and N. Randy Smith, Circuit
Judges, and Michael H. Simon,[*] District Judge.

Opinion by Judge Graber

---

[*] The Honorable Michael H. Simon, United States District Judge for the District of Oregon, sitting by designation.

## SUMMARY[**]

### Whistleblower Protection Act

The panel denied a petition for review in an action brought by a senior auditor at the Defense Contract Audit Agency ("DCAA") under the Whistleblower Protection Act against the Department of Defense, alleging that the Department took several adverse personnel actions against him in retaliation for his protected disclosures at the DCAA.

The panel held that substantial evidence supported the Merit Systems Protection Board's ultimate determination that the DCAA's personnel actions were not in retaliation for petitioner's whistleblowing. Specifically, the panel assumed for purposes of its analysis that petitioner established a prima facie case that all seven of his communications were protected disclosures. The panel adopted the Federal Circuit's test, outlined in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), for determining whether the agency – the DCAA – carried its burden of proving by clear and convincing evidence that it would have taken the same personnel actions against petitioner in the absence of his protected disclosures.

The panel also held that the administrative law judge permissibly excluded disputed evidence.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Mark Hostetter (argued), Law Office of Mark W. Hostetter, San Jose, California, for Petitioner.

David R. Pehlke (argued), Trial Attorney; Allison Kidd-Miller, Assistant Director; Robert E. Kirschman Jr., Director; Chad A. Readler, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

GRABER, Circuit Judge:

Petitioner George Duggan brought this action under the Whistleblower Protection Act against the Department of Defense, alleging that the Department took several adverse personnel actions against him in retaliation for his protected disclosures about misconduct at the Defense Contract Audit Agency ("DCAA"). Following an unsuccessful appeal to the Merit Systems Protection Board ("Board"), Petitioner timely seeks review. We must set aside the Board's decision on the merits if it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 888 (9th Cir. 2004). For the reasons that follow, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner works as a Senior Auditor at the DCAA. The events leading to the present dispute began in October 2012, when DCAA hired Vivian Cusi as its Fremont Branch Manager. Cusi supervised an audit team that included Petitioner.

Cusi visited the audit team for the first time on January 22, 2013. She approached Petitioner's cubicle to introduce herself. According to the supervising auditor, David Downer, who accompanied Cusi, Petitioner was "hostile" and "disrespectful"; he shook Cusi's hand only "reluctantly" and "questioned her presence." Downer further described Petitioner as "angry" and "unfriendly" when he first met Cusi. Downer also characterized the encounter as "quite alarming," in contrast to the uneventful introductions to other members of the team.

Later that day, Cusi and Downer convened a meeting with the audit team. Witnesses testified that Petitioner dominated the meeting and prevented the group from addressing the items on the agenda. In addition, Petitioner questioned Cusi's experience, speaking in an "aggressive," "angry," and "disruptive" tone. Because of Petitioner's behavior, the meeting was cut short before all agenda items could be covered.

When the minutes of the meeting were circulated by email, Cusi replied that they were incomplete. Because Cusi thought that Petitioner's behavior should be recorded and addressed separately, she did not insist that a description of it be included in the minutes. But the minutes did record that Cusi "stopped the meeting" because, in her view, it "was not

productive and [Petitioner] was monopolizing it." Petitioner replied in an email that Cusi's "reaction to the team minutes is disappointing," and he described the meeting as "disastrous."

On February 14, 2013, Cusi informed the audit team that she, Downer, and other supervisors were focused on providing "guidance on team norms." She added that she was concerned that everyone in the branch should understand "the nuances of being candid and being respectful." Petitioner emailed back, copying the whole team:

> Your response below is so arrogant and beyond the pale, like telling victims they asked for it. . . .

> In fact, you were the one who was disrespectful to us by, without provocation or acceptable reason, calling us "unprofessional" multiple times just because we deigned to call you on your rote, poorly reasoned and dangerous mgmt. concepts. . . .

> Your statement "nuance of being candid" below is just an oxymoron. . . . Accept your mistakes and learn from them but do not try to disguise them by blaming those who made none.

> It is just too low to blame the victims for their victimization. So, your response below is again disappointing and insulting, as it is you that need "to improve" your conduct, and

change the toxic environment you have
created.

Other recipients found Petitioner's email to be rude,
disrespectful, and disparaging. Cusi was shocked and
offended.

On March 27, 2013, Petitioner received notice of a
proposed 10-day suspension for "disrespectful and/or
disruptive conduct." The three specifications were his
behavior during the introduction to Cusi at his cubicle, his
behavior during the January 22 afternoon team meeting, and
the February 14 email. The notice also pointed out that this
was Petitioner's third offense for inappropriate behavior. He
responded to the notice by stating, in part: "I have no
illusions of the monolithic mind-set of DCAA management
and their hatred beyond reason of me, so I expect this
retaliation will go to court." On May 1, 2013, Petitioner was
suspended for 10 days.

On July 31, 2013, Petitioner received an annual
performance appraisal. He was rated only "minimally
successful" in the "Critical Element" of "Communication and
Organizational Support." The appraisal recorded that
Petitioner resisted participating in meetings and challenged
the need for them, told supervisors to communicate with him
only by email and not in person, communicated in a
disrespectful way, and sent some emails that were
"particularly harsh." He was admonished that he "must
consistently communicate in a professional and effective
manner and strive to work more harmoniously" with his
supervisors.

Because Petitioner received only a "minimally successful" rating in a "critical" area, DCAA revoked his telework agreement. That action conformed to DCAA policy, pursuant to which an employee's performance must be at least "fully successful" for the employee to be eligible for the privilege of teleworking. Petitioner received no monetary performance award for 2013; but no employee of DCAA did, due to budgetary constraints.

After exhausting the whistleblower complaint procedures with the Office of Special Counsel, Petitioner filed an Individual Right of Action appeal on May 7, 2014. He alleged that seven protected disclosures contributed to DCAA's decision to suspend him for 10 days, to rate his performance as only minimally successful, to revoke his telework agreement, and not to grant him a cash award in 2013. After conducting a hearing, an administrative judge found that Petitioner had made four protected disclosures and that they were a contributing factor to the challenged personnel actions. But the administrative judge went on to find that DCAA had shown by clear and convincing evidence that it would have taken the same personnel actions even without the protected disclosures.

Petitioner appealed to the Board, which issued a final order affirming the administrative judge's decision. The Board also ruled that the administrative judge had acted within his discretion when he denied certain discovery and witnesses proposed by Petitioner. Petitioner timely seeks review.

DISCUSSION

We address the following two issues:[1]  (1) whether the Board erred in finding that the DCAA established by clear and convincing evidence that it would have taken the same personnel actions had Petitioner not made protected disclosures; and (2) whether the Board erred in ruling that the administrative judge did not abuse his discretion in excluding various witnesses and documents.  We hold:  (1) Substantial evidence supports the Board's ultimate determination that the DCAA's personnel actions were not in retaliation for Petitioner's whistleblowing; and (2) the administrative judge permissibly excluded the disputed evidence.

A.  *Substantial Evidence*

Once an employee establishes a prima facie case by showing that a protected disclosure was a contributing factor in the agency's personnel action, the burden shifts to the agency to establish by "clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure."  5 U.S.C. § 1221(e)(2); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012).  "Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established."  5 C.F.R. § 1209.4(e).

As noted, we assume, without deciding, that all seven communications that Petitioner has identified constituted protected disclosures.  We also assume that all the disclosures were a factor in the DCAA's personnel actions, as the

---

[1] We assume, without deciding, that all seven disclosures that Petitioner made were protected.

administrative judge and the Board found with respect to four of the disclosures. Thus, we assume for purposes of our analysis that Petitioner established a prima facie case.

The pivotal question for decision, then, is whether substantial evidence supports the Board's finding that the DCAA proved by clear and convincing evidence that it would have taken the same personnel actions against Petitioner in the absence of his protected disclosures. *See Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1359 (Fed. Cir. 1998) (reviewing such a finding for substantial evidence). Substantial evidence in this context is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

We adopt the Federal Circuit's test for determining whether, in a given case, an agency has carried its burden. In *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), the court listed three factors to consider: (1) "the strength of the agency's evidence in support of" the action taken; (2) "the existence and strength of any motive to retaliate on the part of" the decision-makers; and (3) "any evidence that the agency takes similar actions against" similarly situated employees who are not whistleblowers.

With respect to the proposed 10-day suspension and the resulting performance rating of only "minimally successful" in the area of communication,[2] we also adopt the Federal

---

[2] The restriction of teleworking privileges followed automatically, by policy, from the "minimally successful" rating in the annual performance appraisal. And the absence of a 2013 bonus for all employees resulted

Circuit's holdings to the effect that an employee may be disciplined for the *way* in which he or she communicates a protected disclosure. That is, an employer is entitled to demand basic civility even in this context. As the Federal Circuit has explained, 5 U.S.C. § 1221(e)(2) does not require "that the adverse personnel action be based on facts completely separate and distinct from protected whistleblowing disclosures." *Watson v. Dep't of Justice*, 64 F.3d 1524, 1528 (Fed. Cir. 1995) (internal quotation marks omitted). Accordingly, "wrongful or *disruptive conduct* is not shielded by the presence of a protected disclosure." *Greenspan v. Dep't of Veterans Affairs*, 464 F.3d 1297, 1305 (Fed. Cir. 2006) (emphasis added). To be sure, an employer may not punish an employee merely for being blunt or critical of management when making a protected disclosure. *Id.* at 1305–06. For that reason, the court in *Greenspan* ruled in favor of the employee. *Id.* at 1299. But the court there declined to consider whether the employee's behavior went beyond blunt to become "disruptive" or "disrespectful," because the agency had not relied on such behavior as a ground for the discipline imposed. *Id.* at 1304–05. Finally, we note that the Federal Circuit definitively put to rest Petitioner's argument here, that the manner in which an employee communicates a protected disclosure cannot be disciplined. In *Kalil v. Department of Agriculture*, 479 F.3d 821, 825 (Fed. Cir. 2007), the court emphasized that *Greenspan* does *not* mean that "once a disclosure qualifies as protected, the character or nature of that disclosure can never supply support for any disciplinary action."

---

from budgetary considerations. As to those actions, we readily conclude that the agency has met its burden.

We next apply the *Carr* standards against that backdrop. Considering the record as a whole,[3] the evidence in support of the personnel actions is strong. Nearly all witnesses other than Petitioner characterized his behavior at the January 22 meeting as disruptive and disrespectful; indeed, the team could not complete its discussion of the intended topics because of his conduct. And the Board permissibly concluded that the February 14 email conveyed a nasty and condescending tone that went well beyond mere bluntness or a critique of management practices. Accordingly, the first *Carr* factor supports the Board's decision.

The second *Carr* factor pertains to motive. In this regard, we emphasize that the only question is whether Petitioner's whistleblowing motivated the challenged personnel actions, regardless of whether his critiques were valid. We therefore assume, without deciding, that the substance of his criticisms was correct. It is highly significant that Petitioner had been admonished previously for his inappropriate behavior, twice, *before* he made any of the protected disclosures. As the suspension memorandum pointed out: "Considering it is a 3rd offense, this proposed penalty [a 10-day suspension] is lenient" when viewed in the light of the written disciplinary policies of the agency. The previous discipline and counseling also pertained to Petitioner's behavior when communicating with others at DCAA; the suspension memorandum noted that "previous supervisors/managers have addressed appropriate soft skills." Petitioner was urged "to express [his] viewpoints in a respectful manner." Again, viewing the record as a whole, substantial evidence supports

---

[3] We are unpersuaded by Petitioner's argument that the Board failed to consider all the evidence.

the Board's finding that the personnel actions were not retaliatory.

The third *Carr* factor plays no role in our analysis. DCAA's human resources department found no other employees with three similar offenses. And the suspension memorandum accurately recorded that Petitioner received a more lenient penalty than the agency's progressive-discipline guidelines provide. (In fact, one non-whistleblowing employee received a 12-day suspension for his first offense, though the offenses were not similar to Petitioner's.)

Considering all the *Carr* factors and the record as a whole, we conclude that substantial evidence supports the Board's determination that the agency proved, by clear and convincing evidence, that it would have taken the same disciplinary action against Petitioner in the absence of his whistleblowing activities.

## B. *Excluded Evidence*

Petitioner asserts that the administrative judge abused his discretion by excluding four agency employees as witnesses and excluding, as well, documents and emails in their possession that related to Petitioner. He further claims that the administrative judge erred by excluding, during the examination of one witness who did testify, documents related to Petitioner. We review those decisions for abuse of discretion. *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988).

The administrative judge granted a motion to compel discovery of all documents concerning Petitioner to and from the responsible management officials during the relevant

period.  To the extent that the discovery order did not cover every document now in dispute, the reason is that the witnesses whose documents were sought were not the responsible management witnesses.  And none of the excluded witnesses was a decision-maker with respect to the challenged personnel actions; none influenced the disciplinary actions.

Finally, Petitioner challenges the administrative judge's ruling that denied discovery requests relating to similarly situated non-whistleblowing employees.  But granting those discovery requests would have resulted in a fruitless search for similarly situated employees; the uncontradicted evidence showed that there were no other employees who were disciplined for the third time for disrespectful or insubordinate conduct.

Accordingly, the administrative judge did not abuse his discretion.

**Petition DENIED.**