NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 15 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHLOE HUANG,<br><br>          Petitioner,<br><br>  v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>          Respondent. | No.   20-70242<br><br>MSPB No.<br>SF-1221-19-0228-W-1<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Merits Systems Protection Board

Submitted January 13, 2021[**]
San Francisco, California

Before: BEA and M. SMITH, Circuit Judges, and RESTANI,[***] Judge.

Chloe Huang petitions for review of the Merit Systems Protection Board

("Board")'s ruling denying her Whistleblower Protection Act complaint, which

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

sought to overturn a fourteen-day suspension imposed by her employer, the Department of Homeland Security ("DHS"). We have jurisdiction under 5 U.S.C. § 7703(b)(1)(B). We deny the petition.

Huang was placed on two Performance Improvement Plans ("PIPs") in quick succession from 2017 to 2018. During the second PIP, she sent her supervisor Matthew Loghry three emails in which she complained that he was improperly administering her PIP, told Loghry she would be "making a whistleblower complaint," and threatened Loghry to "drop the PIP" or she "will sue" and "more likely than not, I'll win, and you'll get fired." DHS suspended Huang for fourteen days with the specification that her conduct was unbecoming of a law enforcement officer.

Huang filed a complaint with the Office of Special Counsel ("OSC") seeking corrective action based on the Whistleblower Protection Act. *See* 5 U.S.C. § 1221. The OSC found no evidence of retaliation and Huang filed an individual right of action appeal with the Board. The Board found Huang alleged a prima facie case of whistleblower retaliation based on DHS's perception of Huang as a whistleblower. However, the Board ultimately denied Huang corrective action after it found DHS had shown by clear and convincing evidence that DHS would have suspended Huang even absent its perception of Huang as a whistleblower. Huang's appeal is limited to this last finding.

In reviewing a Board decision concerning a whistleblower retaliation claim, we "must set aside the Board's decision on the merits if it is: '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'"[1]  *Duggan v. Dep't of Defense*, 883 F.3d 842, 843 (9th Cir. 2018) (quoting 5 U.S.C. § 7703(c)). "Substantial evidence in this context is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 846 (internal quotation marks and citation omitted).

In determining whether an agency would have made the same employment action absent the protected activity, we consider three factors: "(1) the strength of the agency's evidence in support of the action taken; (2) the existence and strength of any motive to retaliate on the part of the decision-makers; and (3) any evidence that the agency takes similar actions against similarly situated employees who are not whistleblowers."  *Duggan*, 883 F.3d at 846 (internal quotation marks omitted) (quoting and adopting the Federal Circuit's test in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999)).

---

[1] Huang does not claim the Board's decision was arbitrary or capricious or that there was a procedural violation.  Her only claim is that the Board lacked substantial evidence to support its finding that DHS would have suspended Huang even absent its perception of her as a whistleblower.

1.     The Board did not err in assessing the strength of the agency's evidence in support of suspension.  Huang argues her emails were not sufficiently threatening to warrant a suspension and that the Board reviewed her emails in a vacuum.  Our role is not to reweigh the evidence but to assess whether the Board's conclusion was supported by substantial evidence.  *See Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).  It was.

All decision-makers for the DHS credibly testified that they believed the email was disruptive and inhibitory to effective workplace management.  The abrasive tone of Huang's emails and unmistakable personal threat against Loghry inarguably invite legitimate disciplinary action by the agency.  *See Duggan*, 883 F.3d at 846–47 ("[A]n employee may be disciplined for the way in which he or she communicates a protected disclosure. . . .  [T]he Board permissibly concluded that the . . . email conveyed a nasty and condescending tone that went well beyond mere bluntness or a critique of management practices.  Accordingly, the first *Carr* factor supports the Board's decision." (emphasis omitted)).

Huang's attempt to compare her extortionate email—which she warned Loghry not to share with anyone—to an attorney demand letter or settlement offer is farfetched.  Huang was attempting to coerce Loghry into dropping the PIP, not because of her own improved performance, but because Loghry should be fearful that she would sue and he would lose his job.  She does not explain which public or

private right she was attempting to vindicate by complaining to Loghry about his administration of her PIP. Indeed, the Board found her emails to Loghry not even to be legitimate whistleblower complaints, a finding she does not contest. Nor did Huang show that it was a usual or accepted course of conduct at DHS to resolve internal workplace disagreements through furtive, personal threats of litigation.

Huang's second argument is that the Board reviewed the June 28 email in a vacuum, failing to consider the full record including, for example, that Huang was required to complete two PIPs within forty-three days of each other, which was stressful for her. Huang does not adequately demonstrate that the Board did not take these factors into consideration, but even if she had, it is not apparent why any of these factors are particularly relevant to whether DHS viewed Huang's threatening emails as an adequate basis for a two-week suspension.

2. Neither did the Board err in finding little to no credible record evidence of retaliatory animus. On appeal, Huang argues only that an inconsistency in DHS deciding official Jerry Templet's testimony shows DHS did treat her differently due to her protected whistleblowing activity.

At the hearing before the Board, when asked whether Templet's decision to sustain Huang's suspension would have been affected if he had received confirmation that Huang had engaged in whistleblowing, he stated "[a]bsolutely it would have." It is unclear how exactly Templet's decision would have been affected

5

if he had received confirmation of Huang's whistleblower status. However, Templet, whom the Board found credible, had moments prior stated he would "come to her aid" had he thought she had been a whistleblower. And, immediately after, Templet was asked directly: "assuming that she was a whistleblower, would you have retaliated against her for that fact?" to which he responded "No." The Board interpreted Templet's testimony as meaning he "would have ensured that she received whistleblower protection had he been aware of any actual whistleblowing on her part."

An administrative judge's interpretation of ambiguous testimony or evidence must be rational and based on substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). Given the context of the statement, it would be strained to interpret Templet as admitting he would have treated Huang worse if he knew of her whistleblowing. Huang's interpretation runs counter to the balance of the record, which shows Templet had no personal relationship or animosity toward Huang, Templet was not implicated in Huang's threat or whistleblower complaint, and that both Slade and DAAP independently concluded the email was extortionate and recommended disciplinary action. The administrative judge's interpretation was rational and Huang points to no other record evidence supporting her interpretation.

3. The third *Carr* factor did not play any role in the Board's analysis because DHS failed to uncover similar situations of employees who were not whistleblowers who received similar punishment.

4. After considering the whole record and the three *Carr* factors, the Board found that DHS showed by clear and convincing evidence that it would have suspended Huang for fourteen days regardless of DHS's perception of her as a whistleblower. We agree that both relevant *Carr* factors weigh heavily in favor of DHS. None of Huang's arguments undermine the Board's conclusions that DHS had sufficient support to suspend Huang for her emails or that DHS lacked retaliatory animus. The Board's conclusion was based on substantial evidence.

**DENIED.**