# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 8, 2024
Lyle W. Cayce
Clerk

No. 23-10553

Stephen Cobey Monden,

*Plaintiff—Appellant*,

*versus*

Consolidated Nuclear Security, L.L.C.,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:22-CV-4

_____

Before Jones, Dennis, and Douglas, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:[*]

Plaintiff Stephen Cobey Monden appeals the district court's grant of summary judgment to his employer, Consolidated Nuclear Security, LLC ("CNS") on his whistleblower claims.  Finding no error, we AFFIRM.

_____

[*]Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 23-10553

## I. BACKGROUND

Since 1975, the National Nuclear Security Administration's Pantex Plant ("Pantex"), currently operated by the defendants, has been the primary assembly and maintenance center for the United States's nuclear weapons arsenal. The plaintiff began working at Pantex in July 2010, and from April 2014 until his termination worked as a Production Section Manager ("PSM") supervising Production Technicians ("PTs"). As hands-on weapons workers, PTs perform almost all their job duties in highly secured areas with access controlled by the "Argus" security system. Argus requires employees to scan their individual badge and use biometric identifiers to enter and exit secured areas.

PTs are non-exempt hourly employees and are required to manually enter their time on CNS's timekeeping software. Their hours are then reviewed and approved by PSMs. CNS trains all PTs and PSMs annually on timekeeping policies and procedures.

CNS first observed unusually high PT overtime at Pantex in late 2018 and proceeded to conduct a preliminary data-sampling investigation comparing Argus badge-in and badge-out activity with PT payroll data. The initial data sampling revealed meaningful discrepancies between the two data sets. CNS responded by reporting possible Pantex PT overcharges to the Department of Energy's Office of Inspector General ("IG") in February 2019. The IG responded by thanking CNS for the work it had done on its preliminary investigation and asked CNS to continue "gathering and reviewing more information" without interviewing any employees.

Monden was one of the approximately 120 employes whom the IG, and then CNS, interviewed in 2019. During his interviews with Autum Flores, an outside legal counsel retained by CNS to conduct the HR investigation, and Heather Freeman, Pantex's Human Resources Manager,

Monden confessed to multiple violations of CNS's timekeeping policies. Monden admitted to allowing PTs to leave early and instructing them to record more time than they worked. Monden also admitted to making "deals" with PTs to approve timesheets with more hours than they had worked in exchange for the PTs' completing certain tasks. Interviews with other CNS employees during the HR investigation confirmed Monden's misconduct. Multiple PTs identified Monden as a supervisor who let them record more time than they worked, allowed them to leave early, and negotiated deals with PTs. During his interviews with Freeman and Flores, Monden acknowledged that he knew that he was responsible for correctly and accurately approving time. In later depositions, Monden also confirmed that Flores and Freeman never asked him about his conversations with the IG.

Following the HR investigation interviews and data analysis, Freeman produced a Disciplinary/Termination Case Summary recommending Monden's termination. CNS's Chief Human Resources Officer Diane Grooms, who did not participate in Monden's interviews, then decided on the appropriate discipline for Monden. Although Grooms was aware Monden had been interviewed by the IG, she did not consider any information he had told the IG. Nor could she have done so because she 1) only considered the Disciplinary/Termination Case Summary prepared by Freeman in making her decision, and 2) was not aware of, and could not have been aware of, what Monden told the IG because Flores or Freeman never asked Monden about the content of those interviews. Grooms also did not know Monden had made accusations against other supervisors at CNS. Ultimately, Monden was one of forty-two employees (thirty-nine PTs and three PSMs) fired by CNS for timekeeping fraud following the HR investigation.

In January 2022, Monden filed the instant lawsuit, alleging that his testimony to the IG was a contributing factor to CNS's decision to terminate

his employment, and CNS thus violated the National Defense Authorization Act of 2013 ("NDAA"), 41 U.S.C. § 4712. Following briefing, the district court granted CNS's motion for summary judgment.

## II. Discussion

This Court reviews an award of summary judgment de novo, applying "the same standard as the district court." *Satterfield & Pontikes Constr., Inc. v. United States Fire Ins. Co.*, 898 F.3d 574, 578 (5th Cir. 2018) (citing *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co.*, 876 F.3d 119, 127–28 (5th Cir. 2017)). Under Federal Rule of Civil Procedure 56(a), we uphold the district court's grant of summary judgment if "there is no genuine dispute as to any material fact." Such a dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) (citation and quotation marks omitted). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation omitted).

Section 4712 of the NDAA "prohibits any recipient of federal dollars from retaliating against whistleblowers who report an abuse of that money." *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 353 (5th Cir. 2021). Under the statute:

> An employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body. . . information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related

> to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1). The statute further incorporates 5 U.S.C. § 1221(e), which requires a plaintiff to prove: (1) while he or she was employed by a government contractor, he or she disclosed information that he or she reasonably believed was evidence of "gross mismanagement" of a federal contract or grant to someone with responsibility to investigate, discover, or address misconduct; and (2) the protected disclosure was a "contributing factor" to the adverse employment action. *See* 5 U.S.C. § 4712(a)(6); *Wondercheck v. Maxim Healthcare Servs., Inc.*, 495 F. Supp. 3d 472, 481 (W.D. Tex. 2020).

"Upon the plaintiff employee [sic] presenting a *prima facie* case, the contractor can then demonstrate, by clear and convincing evidence, that it would have taken the same personnel action despite the protected activity." *Id.* (citing 5 U.S.C. § 1221(e)). In determining whether the contractor has met its burden, the Federal Circuit's "*Carr* factors" have been widely cited. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). *See Duggan v. Dep't of Def.*, 883 F.3d 842, 846 (9th Cir. 2018); *DuPage Reg'l Off. of Educ. v. U.S. Dep't of Educ.*, 58 F.4th 326, 352 (7th Cir. 2023). The *Carr* factors balance

> the strength of the [employer's] evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the [personnel] who were involved in the decision; and any evidence that the [employer] takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*DuPage*, 58 F.4th at 352 (citing *Carr*, 185 F.3d at 1323).

Even if we were to assume Monden had produced a *prima facie* case of retaliation, we conclude that the district court did not err in its application of

the *Carr* factors. First, the evidence of Monden's misconduct outlined above is simply overwhelming. During his interview by Freeman and Flores, Monden did not deny making deals with PTs, approving records he knew to be false, instructing employees to record more time than they actually worked, or repeatedly allowing employees to leave early and report a full shift. He attempts to minimize this wrongdoing by claiming that he allowed employees to work through breaks and lunch. But employees working through breaks and lunch would only yield a discrepancy of about one hour. In contrast, the documented timesheet discrepancies of PTs Monden supervised in August and September 2018 averaged 2.78 hours and went as high as 5.14 hours.

Second, there is no evidence that Grooms, the sole decisionmaker in Monden's termination, had any retaliatory motive.[1]

Finally, it is noteworthy that CNS evenhandedly terminated other employees who engaged in timekeeping fraud, both before and after the HR investigation exposed Monden. In two years before Monden was fired, CNS had investigated and terminated eight employees for timekeeping fraud. Grooms was the sole decisionmaker in all eight cases, and the IG was not involved in any of them. And the terminations precipitated by the large-scale HR investigation targeted forty-two of the most egregious offenders— including Monden—out of over a hundred who spoke with the IG.

---

[1] The Supreme Court has recently held that an employee is not required to show "retaliatory intent" on the part of the employer to show that his or her "protected activity was a contributing factor in the adverse employment action" under the anti-retaliation provisions of the Sarbanes-Oxley Act (18 U.S.C. § 1514A(a)). *Murray v. UBS Sec., LLC*, 144 S. Ct. 445, 455 (2024). As the Court put it, "[s]howing that an employer acted with retaliatory animus is one way of proving that the protected activity was a contributing factor in the adverse employment action, but it is not the only way." *Id.*

No. 23-10553

Consequently, each of the *Carr* factors weighs decisively in favor of CNS.

For the reasons stated above, we AFFIRM.