# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JAIME FIGUEROA,
                Appellant,

      v.

DEPARTMENT OF
      TRANSPORTATION,
                Agency.

DOCKET NUMBERS
DC-1221-16-0136-W-3
DC-1221-15-0982-B-2

DATE: June 12, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Stephanie Rapp-Tully, Washington, D.C., for the appellant.

Glenn H. Brown, Anchorage, Alaska, for the agency.

Rebecca G. Snowdall, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in these individual right of action appeals. For the reasons discussed below, we GRANT the petition for review, VACATE

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      This appeal has an extensive procedural history that is not material to the issues now before the Board and which we need not repeat here. The appellant filed two appeals in which he alleged that the Federal Aviation Administration (FAA or agency) took various personnel actions against him in retaliation for his protected disclosures. MSPB Docket No. DC-1221-15-0982-W-1, Initial Appeal File, Tab 1; MSPB Docket No. DC-1221-16-0136-W-1, Initial Appeal File (0136 IAF), Tab 1. The administrative judge thereafter joined the two appeals for adjudication. MSPB Docket No. DC-1221-16-0136-W-2, Appeal File (0136-W-2 AF or AF)[2], Tabs 1, 22; MSPB Docket No. DC-1221-15-0982-B-1, Appeal File, Tab 4.

¶3      After a 6-day hearing, MSPB Docket No. DC-1221-16-0136-W-3, Appeal File (0136-W-3 AF), Tabs 17-22, the administrative judge issued an initial decision in which he found that the appellant exhausted his administrative remedies before the Office of Special Counsel (OSC), but failed to show by preponderant evidence that he made a protected disclosure because he failed to show that a reasonable person in his position would have believed that the alleged financial improprieties he disclosed evidenced a violation of law, rule, or regulation, gross mismanagement, or a gross waste of funds, *Figueroa v. Department of Transportation*, MSPB Docket Nos. DC-1221-16-0136-W-3, DC-1221-15-0982-B-2, Initial Decision (ID) at 49-52 (Aug. 16, 2018); 0136-W-3 AF, Tab 24. The administrative judge also found that the appellant failed to show that a second disclosure made to the FAA Administrator was a contributing factor

---

[2] From this point, even before he formally joined the appeals some time later, the administrative judge treated the appeals as joined. All pertinent pleadings and orders are contained in 0136-W-2 AF unless otherwise indicated. For simplicity's sake, all references to "AF" should be understood to refer to the file in MSPB Docket No. DC-1221-16-0136-W-2.

in a personnel action because he did not establish that any of the managers involved in the personnel actions at issue were aware of the disclosure. ID at 53-58.

¶4    The appellant petitions for review of the initial decision. Petition for Review File, MSPB Docket No. DC-1221-16-0136-W-3 (PFR File), Tab 1. The agency responds in opposition to the petition for review and the appellant replies to the agency's response. PFR File, Tabs 3-4.

**ANALYSIS**

¶5    The following background information is not disputed. NextGen is an office within the FAA charged with modernizing the air traffic management system via technological advancement and other available means. NextGen is run by an Assistant Administrator who reports to the FAA Administrator. As relevant here, it is divided by function into six divisions, A though F, each headed by a director.

¶6    NextGen receives appropriated funds which are allocated to performing offices via a device known as a Project Level Agreement (PLA). PLAs are funding documents that contain funding levels for particular projects with schedules, deliverables, and statements of the expected benefits. Because NextGen is intended to search for the optimal future air traffic management system, it is normal that not every funded research activity will achieve the projected deliverable and not every achieved deliverable will result in the expected benefits.

The appellant did not show by preponderant evidence that his second protected disclosure was a contributing factor in a personnel action.

¶7    The appellant sent an email to the FAA Administrator at his public email address on January 9, 2015. 0136-W-3 AF, Tab 23, Exhibit QQQQ. In the email, he made allegations of financial and ethical misconduct on the part of his superiors and he asserted that they retaliated against him for making internal

reports about these matters by reassigning him to a position with lesser status and responsibility. *Id.*

¶8 It is not disputed that the email was read by one of the Administrator's two assistants. The administrative judge found, however, that there was no evidence that any of the managers responsible for the personnel actions taken against the appellant had any knowledge of the email. ID at 58. On review, the appellant contends that it is not plausible that no one in the Administrator's office took note of the appellant's email. PFR File, Tab 1 at 15-16.

¶9 According to the initial decision, and not disputed by the appellant on review, the Administrator had a public email address that received "many, many emails from the public, from media, from all sources." ID at 54. The Administrator had two assistants who screened the emails in his public account and either archived messages, forwarded them to the Administrator, or forwarded them to other agency employees for action as appropriate. The Administrator himself had access to the public account, but he never looked at it personally and relied entirely on his assistants to screen messages from the account. He had a second, private email address for senior agency managers to use.

¶10 The administrative judge found that the agency's records showed that one of the two assistants opened and read the appellant's email. Neither of them remembered doing so and neither of them took any action on it. The administrative judge found their testimony credible. ID at 58. The credibility determinations of an administrative judge are virtually unreviewable, and the appellant has not offered a sufficient reason here to set them aside. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *Bieber v. Department of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). Therefore, we find no basis to disturb the administrative judge's finding that the appellant failed to prove by preponderant evidence that his disclosure to the FAA Administrator was a contributing factor in a personnel action taken against him.

<u>The appellant showed that he reasonably believed that his first disclosure was protected.</u>

¶11    According to his undisputed testimony, Mr. B arrived at the FAA in September or October 2013 as Assistant Administrator in charge of the NextGen program. His arrival was immediately followed by a lengthy furlough, during which he read a number of Inspector General (IG) reports concerning the lack of transparency in how NextGen pre-implementation funds[3] were being used. ID at 38-39. He met with the new FAA Administrator and the new Deputy Administrator to discuss the agency's priorities and they wanted him to focus on improvement in the management and documentation of pre-implementation funds. *Id.*

¶12    When the furlough was over, Mr. B asked Mr. J to put together a study of the issues in pre-implementation funding. ID at 26, 39. Mr. J testified that there was an existing audit done recently by Mr. E comparing expenditures to deliverables and which had found $50 million in missing deliverables. ID at 27. "Missing" did not necessarily mean the funds had been misappropriated, but perhaps that there was a lack of proper documentation. ID at 27. Mr. B and Mr. J both testified that Mr. B gave no specific guidance about the method or means by which Mr. J was to complete the assignment. ID at 27, 40. Mr. J selected his own team, which included, as relevant here, the appellant and Mr. W. ID at 27.

¶13    At the end of May 2014, Mr. J presented Mr. B with a 90% draft of a document titled "Pre-Implementation Funding Internal Review" (IRR). ID at 28; AF, Tabs 133-34. Mr. B had the draft distributed internally to senior management, and his staff collected comments into a spreadsheet, which was presented to Mr. J and the appellant the day before a meeting designed to discuss the IRR. ID at 14, 41-42; AF, Tab 100.

¶14    According to his OSC complaint, the appellant, as a co-author of the IRR, disclosed that there were nearly $50 million in funded program deliverables that

---

[3] This relates to how money is spent before acquisition contracts are executed. Pre-implementation funding is the largest portion of NextGen's budget.

could not be found. 0136 IAF, Tab 1 at 12; AF, Tabs 133-34. After a thorough and detailed summary of the hearing testimony that neither party disputes, the administrative judge concluded that the appellant failed to show by preponderant evidence that he reasonably believed that his disclosure evidenced a violation of law, rule, or regulation, a gross waste of funds, or gross mismanagement. In making this finding, the administrative judge relied on two main considerations. First, he noted that the IRR received a great deal of criticism when it was circulated among the NextGen senior management team. ID at 50-51. Second, he characterized the appellant's disclosure as a disagreement about policy matters and, in doing so, he credited the testimony of Mr. F that the appellant's disclosure "was a contrived attack on the current NextGen leadership implying that the appellant . . . had opinions about how to manage the NextGen activities which were not accepted by current leadership or which had fallen out of favor." ID at 51-52.

¶15 A protected disclosure includes any disclosure of information which the employee reasonably believes evidences, inter alia, a violation of law, rule, or regulation, gross mismanagement, or a gross waste of funds. 5 U.S.C. § 2302(b)(8). The test of a reasonable belief is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced, as relevant here, a violation of law, rule, or regulation, gross mismanagement, or a gross waste of funds. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 13 (2015).

¶16 The initial decision stated, "neither the Board nor Congress requires more than the belief be *reasonable*." ID at 48. It then said, however, that "[t]he appellant's allegation must be reasonable and not 'debatable among reasonable people.'" *Id*. In *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 9 (2015), which the administrative judge cited in support of the "not debatable among reasonable people" test, the Board actually noted that Congress had

specifically disapproved of the test because it imposed additional burdens of proof on the employee that were not present in the statute. The Board clarified that the employee need only show that he had a reasonable belief that his disclosure evidenced the kind of misconduct identified in 5 U.S.C. § 2302(b)(8), rather than a policy disagreement. *Webb*, 122 M.S.P.R. 248, ¶ 9. In light of the foregoing, the administrative judge erred by finding that the appellant failed to show that his belief was reasonable because he did not disclose impropriety that was not debatable among reasonable people.

¶17 The initial decision also placed too much weight on the fact that other managers disagreed with the appellant's conclusions without considering the nature of those disagreements and the extent to which they related (or did not relate) to his key disclosure. The Board has held that it is error to conclude that a belief is not reasonable simply because management officials do not agree with it. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 16 (2014); *Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶ 17 (2009). As a factual matter, however, the degree to which other managers actually disputed the appellant's findings is subject to debate. For example, comment 1 calls for a discussion of past efforts to solve "the PLA problem" and why they did not work. AF, Tab 100 at 4. Comment 6 calls for creating a new process for funding internal activities now handled through the PLA process that do not fit the PLA format or purpose. *Id.* at 5. Comment 10 criticizes the authors for re-assessing financial controls for a time period that had already been audited even though that was the assignment given to them by Mr. B. *Id.* at 6. Comment 11 suggests that the authors are biased and that someone else should be assigned to the project. *Id.* Comments 17-18 call for a historical discussion. *Id.* at 8-9. Comment 25 questions the purpose of the assignment. *Id.* at 10. Comment 27 questions the competence of the authors. *Id.* at 11-12. Comment 30 complains about not having been consulted earlier when the authors had not been instructed to include stakeholders. *Id.* at 12-13. Comments 35 and 37-38 take issue with a statement

that recommendations were not implemented but then agree that recommendations were not implemented. *Id.* at 13-14.

¶18    These comments, and many others, may reflect a great deal of disagreement about the contents of the IRR as well as a misunderstanding on the part of the commenters of the assignment that Mr. B gave the IRR's authors, but they do not relate to the appellant's core disclosure. As to that, comments 39-45, pertaining to the appellant's particular disclosure of "178 missing deliverables valued at $49.2 million," did not dispute the appellant's figures but instead, requested that the report define the term "missing deliverable" and clarify that the figures include lawful expenditures that were improperly or incompletely documented. AF, Tab 100 at 14-16. Comment 116 noted that efforts were underway to recover missing documentation, that some improperly logged files had been located, and further efforts to correct documentation problems were ongoing. Both of these comments are an acknowledgment that the underlying problem disclosed by the appellant, that there were missing deliverables that had not been accounted for, in fact existed. *Id.* at 31.

¶19    The initial decision also failed to take into account evidence that corroborated the appellant's disclosure, such as the substantially similar report prepared by Mr. E and the existing IG reports that Mr. B reviewed during the furlough, which had all reached similar broad conclusions about mismanagement of NextGen pre-implementation funds. In addition, the administrative judge rejected the appellant's proposed hearing exhibit PPPP, a document entitled "FAA's Management and Oversight of Development Funding Exit Conference Document March 9, 2017." AF, Tab 127. The administrative judge found that the document was not relevant because the truth of the appellant's disclosure was not at issue in this appeal. MSPB Docket No. DC-1221-16-0136-W-3, Hearing Compact Disc, June 4, 2018 (14:00).

¶20    The administrative judge is correct that the appellant need not prove that his disclosure actually evidenced a violation of law, rule, or regulation, gross

mismanagement, or a gross waste of funds. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 11 (2016). However, the U.S. Court of Appeals for the Federal Circuit and our own decisions have held that the fact that others share the appellant's belief is a factor that weighs in favor of finding his belief reasonable. *Greenspan v. Department of Veterans Affairs*, 464 F.3d 1297, 1305 (Fed. Cir. 2006); *Ayers*, 123 M.S.P.R. 11, ¶ 22. The Exit Conference Document was prepared by the agency's IG and is a summary of an analysis of NextGen developmental funding during fiscal years 2009-2015 by auditors who "conducted our work in accordance with generally accepted Government auditing standards." AF, Tab 127 at 4. In addition to citing a lack of established procedures for tracking expenditures, the IG stated:

> FAA identified 640 deliverables valued at $109 million missing from the Office of NextGen. Although FAA took action to recover missing NextGen deliverables from program offices, 118 remained missing or late from August 2010 to 2016.

AF, Tab 127 at 5. The excluded exhibit provides significant support for the appellant's claim that his belief was reasonable and we find that the administrative judge abused his discretion by excluding it.

¶21    The initial decision's second basis for finding that the appellant failed to show that he had a reasonable belief that his disclosure was protected was that the disclosure was about a policy disagreement and was motivated by a desire to discredit senior management. The appellant's disclosure that there were 178 missing deliverables valued at $49.2 million is not reasonably characterized as a disagreement about policy. The initial decision noted testimony from Mr. W that a significant proportion of the missing funds could be accounted for by projects being funded directly by a budget committee outside the PLA process. ID at 45. The IG expressed disapproval of the extra-PLA funding process because it allowed for funding projects before there was an approved budget or scope of work. AF, Tab 127 at 5. The expert opinion of the IG's trained auditors that NextGen's extra-PLA funding process was improper undercuts the

administrative judge's conclusion that the decision to fund projects in this fashion was a debatable question of policy. Even assuming arguendo that a portion of the missing funds could be attributable to financial practices that were debatable matters of policy, the majority of the missing funds covered by the appellant's disclosure were not attributable to these practices. We find that the administrative judge's conclusion that the appellant's disclosure concerned debatable matters of policy is not supported by the weight of the record evidence.

¶22    The administrative judge also credited Mr. F's testimony that the IRR was a "contrived attack" on NextGen management and, by implication, not a genuine report of misconduct. ID at 52. The Board has repeatedly held that when a putative whistleblower has met the reasonable belief test, the motivation for his disclosures is irrelevant. *Sood v. Department of Veterans Affairs*, 88 M.S.P.R. 214, ¶ 14 n.3 (2001); *Carter v. Department of the Army*, 62 M.S.P.R. 393, 402 (1994), *aff'd*, 45 F.3d 444 (Fed. Cir. 1995) (Table). The fact that the appellant may have been perceived to some extent as a troublemaker is not material to the question of whether a disinterested observer with the facts known to and reasonably ascertainable by him could conclude that the agency's financial activities violated a law, rule, or regulation, or constituted gross mismanagement or a gross waste of funds. *Johnson v. Department of Defense*, 87 M.S.P.R. 454, ¶ 10 (2000). Because the appellant's alleged motivation is not a consideration that is pertinent to the question of whether the appellant reasonably believed his disclosure was protected, the fact that the administrative judge found that Mr. F's assertion about the appellant's alleged motivation was credible is not a binding and material credibility determination.

¶23    For all the above reasons, we find that the appellant proved by preponderant evidence that he had a reasonable belief that he made a protected disclosure of gross mismanagement.[4]  We further find that, within approximately a year after

---

[4] *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 16 (2007) (defining "gross mismanagement" as a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission, that is

his disclosure in May 2014, Mr. B reassigned the appellant in January 2015 and Ms. W failed to select him for his former position when the agency readvertised it in June 2015. Because these actions were taken by management officials with direct knowledge of the appellant's disclosures and took place with a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action, the appellant has shown contributing factor. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 18, 21 (2015) (stating than an appellant may prove that a disclosure was a contributing factor in a personnel action under the knowledge/timing test by demonstrating that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within 1 to 2 years of the disclosure). Accordingly, we find that the appellant has established a prima facie case of reprisal for whistleblowing with respect to these two personnel actions.

¶24    The appellant further contended below that the agency subjected him to an additional personnel action when he was subjected to a hostile working environment. On remand, the administrative judge shall determine whether the appellant has shown that he was subjected to treatment that individually or collectively, had practical and significant effects on the overall nature and quality of his working conditions, duties, or responsibilities so as to constitute a significant change in his duties, responsibilities, or working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii). *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. If the administrative judge finds that the appellant was affected by a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii), he shall

---

more than de minimis wrongdoing or negligence, and that does not include management decisions that are merely debatable); *cf. Wood v. Department of Defense*, 100 M.S.P.R. 133, ¶ 12 (2005) (finding that the appellant made a nonfrivolous allegation that he disclosed gross mismanagement when he reported that an agency official failed to request an investigation into large-scale thefts by agency employees and for having failed to redeem $90,000 in discount coupons; under the circumstances and in light of the alleged value of the coupons, the Board found it was not debatable among reasonable people that the disclosures alleged serious errors by agency management).

determine whether the appellant has shown that his protected disclosure was a contributing factor to that personnel action.

<u>The appeal must be remanded for further proceedings.</u>

¶25     Because the appellant has made out a prima facie case, the agency must show by clear and convincing evidence that it would have taken the same personnel actions in the absence of the protected disclosure.  5 U.S.C. § 1221(e)(1)-(2); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).  The administrative judge made no findings regarding this issue.  We find it appropriate to remand this case because the administrative judge, as the hearing officer, is in the best position to make factual findings and detailed credibility assessments on the remaining issue.  *Turner v. Department of Agriculture*, 2023 MSPB 25, ¶ 19.

## ORDER

¶26     For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.[5]

FOR THE BOARD:                     _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.

---

[5] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.